## JOSEPH E. ISAACS *v.* WALTER GORHAM.

I. loaned to G. $1,000, taking, to secure the repayment thereof, his note therefor, and eleven receipts, signed by G.'s wife, for eleven consecutive monthly payments of £15 each, payable to her by J. G. K. & Sons, in monthly installments, out of

Isaacs v. Gorham.

moneys constituting a part of her separate estate. Before the first of these payments became due, G. forbade J. G. K. & Sons to pay the amounts to I., and thereafter drew them out as they became due, himself.

*Held*, that in an action by I., to recover the $1,000 from G., the latter could not be arrested.

I. He had not removed or disposed of his property with intent to defraud his creditors. The moneys thus drawn out by him were not his property. His creditors had no claim thereon, nor could they be applied to the payment of his debts. They were the separate property of his wife, and the fact, that the defendant drew them from the banker authorized to pay them on her receipt, could not, in any aspect, be regarded as a fraudulent removal or disposition of *his* property.

II. Nor did the defendant's withdrawal of the money, intended as a security for the repayment of the loan, show that the debt was fraudulently contracted. The receipts given by the wife, she had the power to countermand. The husband had no authority to bind the wife by his agreement, and the plaintiff could not allege that he had been defrauded by relying upon such an agreement.

APPEAL by plaintiff from an order discharging the defendant from arrest. This action was brought to recover $1,000, money borrowed. At the time of the loan, the wife of the defendant, whose maiden name was Josephine Wilson, was receiving from England, through the hands of James G. King & Sons, monthly payments of £15 each. The defendant, learning that a bequest of £3,000 had been left her by a relative in England, borrowed the amount in suit from the plaintiff for the purpose of going there and making arrangements to procure the bequest. As security for the repayment of the loan, he gave a promissory note for the amount, $1,000, payable in three months, signed by himself and wife, and eleven receipts in the following form:

"£15.                                                           Date.

"Received, of James G. King & Sons, through Walter Gorham, proceeds of fifteen pounds sterling, placed at my disposal by Sir Sam'l Scott & Co., as per letter of ————

'JOSEPHINE WILSON.

"Pay to the order of Joseph E. Isaacs.

"WALTER GORHAM."

These receipts were given, one for each month for eleven months, the only difference being in their date.

The defendant was unsuccessful in his journey to England, and on his return directed James G. King & Sons not to make the monthly payments to the plaintiff under these receipts, but proceeded to draw them out as they fell due. The affidavits were contradictory upon the question, whether or not the plaintiff consented to his doing so. The defendant having been arrested in this action, brought to recover the $1,000 from him moved to be discharged from arrest. The motion was granted, and the plaintiff appealed.

*H. Morrison*, for the appellant, contended,

I. That the defendant was guilty of a fraud in contracting the debt or obligation for which the action was brought.

II. That he had disposed of his property with intent to defraud his creditors, and cited the following authorities: *Van Wyck* v. *Seward*, 18 Wend. 375, *per* Bronson, J., p. 395; *Letz* v. *Ely*, 3 Abbott's Pr. R. 478; Chitty on Con. p. 622, note *n*, and cases therein cited; *Crandall* v. *Byan*, 5 Abbott's Pr. R. 163; *Brady* v. *Bissell*, 1 ibid. 76.

*G. T. Jenks*, for the respondent.

DALY, J.—There was nothing to show a removal or disposition of property to defraud creditors. The fund in the hands of James G. King & Sons belonged to the defendant's wife. The defendant's wife signed several receipts for subsequently occurring payments out of this fund, and by an order of the defendant attached to each receipt, the payments were made payable to the plaintiff, and the receipts, with the orders of the defendant underwritten, were delivered to the plaintiff. The defendant, in violation of this agreement and understanding—that the payments might be made to the plaintiff—drew them from the bankers as they fell due. But the money thus drawn was not his property. This creditor had no claim upon it. It could not

have been applied to the payment of his debt. If a judgment had been recovered, and he was brought before a judge upon proceedings supplementary to execution, the judge could not order James G. King & Sons to make these payments to the plaintiff until his debt was satisfied, nor, if the defendant had the money in possession, could the judge direct the defendant to pay it to the plaintiff. It was the separate property of the wife, and the fact that the defendant drew it from the bankers, authorized to pay it on her receipt, could not, in any aspect, be regarded as a fraudulent removal or disposition of his property.

The withdrawing of the money, which was designed by the defendant to be a security for the repayment of the thousand dollars loaned to the defendant by the plaintiff, would not show that the debt was fraudulently contracted. The giving of receipts for accruing payments signed by the wife, with the defendant's order, making them payable to the plaintiff, was no agreement on the part of the wife that these payments might be made to the plaintiff. If the plaintiff saw fit to loan money upon such a security, it was his own folly. He should have had something which neither the wife nor husband could countermand. The wife simply acknowledged that she had received the payments from the bankers through the defendant. She gave a receipt to the defendant which would authorize him to receive the payments from James G. King & Sons, but which did not authorize him to transfer them, by way of security or otherwise, to the plaintiff. Upon the production of that receipt the bankers were authorized to pay the amount acknowledged by the receipt to the defendant, but not to his order. The bankers might probably have been protected if they had paid the money to the plaintiff upon the production of the receipt, but they would not have been if notified by the wife not to pay it to him. The husband had no authority to bind the wife by the agreement he made with the plaintiff, and the plaintiff cannot allege that he was defrauded by relying upon an agreement which constituted no security at all, which the wife could repudiate at any moment, and which it appears she did, as the

defendant swears that the money was drawn by him at her request, for the purpose of obtaining the means of subsistence for her and himself.

Order appealed from affirmed.